IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BLAKE BOOKSTAFF, )
        Plaintiff )
        v. )   No. 3:06-cv-85
WILLIAM J. MARQUEZ, )
        Defendant )

## MEMORANDUM OPINION

Plaintiff Blake Bookstaff and defendant William J. Marquez were jointly involved in several internet-related business ventures. Marquez claims that Bookstaff failed to disclose material facts to him in connection with the sale of Marquez's interest in two of the businesses to Bookstaff. Currently pending is the plaintiff's motion to dismiss defendant's counterclaim pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure [Court File #27]. Marquez has not filed a response to that motion, but has filed an amended answer and counterclaim with the Court's permission [Court File #46]. For the reasons that follow, the motion to dismiss the counterclaim will be denied.

# I.

## *The Allegations of Defendant's Counterclaim*

Defendant Marquez makes the following factual allegations in the amended counterclaim:

. . .

4. In October of 2000, Marquez and Bookstaff formed the Florida corporation of PopularCategories.Com, Inc. Marquez and Bookstaff were each initially 50% shareholders in this Florida corporation. Bookstaff was also an officer and director of Popular Categories. Throughout subsequent transactions, Bookstaff became the majority shareholder and Marquez the minority shareholder of Popular Categories.

5. In March of 2004, Marquez and Bookstaff also formed North American Internet, LLC, a Florida Limited Liability Company. Marquez and Bookstaff were both members of North American Internet, LLC (North American). Throughout subsequent transactions, Bookstaff acquired the majority membership interest and Marquez held the minority membership interest in North American. The filings of the State of Florida for North American listed Vince Claude (Claude) as the managing member of North American. However, Bookstaff was, in reality, the acting managing member of that entity.

6. In February of 2001, Marquez, Bookstaff and Claude formed Popular Enterprises, LLC, a Florida Limited Liability Company. The concept was that Popular Enterprises would be owned 2/3 by Popular Categories and 1/3 by Compatible Technologies, another Florida corporation owned by Claude. Based upon the 50/50 ownership of Popular Categories, this arrangement would have resulted in Bookstaff, Marquez and Claude each effectively owning 1/3 of Popular Enterprises. The initial application to the State of Florida was signed by Bookstaff

and indicated his status as the "Secretary" of Popular Enterprises. Subsequent filings confirm that Bookstaff was acting as an officer and as the "VP" of Popular Enterprises. However, until approximately March/April of 2005, Marquez, Bookstaff and Claude were each listed and disclosed individually as the managers/members of Popular Enterprises. It was not until approximately April 28, 2005, that the official State of Florida records were amended so that the managers/members of Popular Enterprises were changed from Bookstaff, Marquez and Claude, Individually, to Claude as the President of Compatible Technologies, Inc., and Bookstaff as the Vice-President of Popular-Categories.Com, Inc.

7. Popular Categories, Popular Enterprises, and North American essentially operated as internet domain name aggregators and also operated an internet search engine and service called "Netster."

8. Based almost exclusively upon the internet domain aggregation techniques developed by Mr. Marquez, Popular Enterprises, North American and Netster became incredibly profitable.

9. As the business progressed, the three principals evolved into a tacit division of labor with respect to the operations. Mr. Marquez focused primarily upon the domain name aggregation and business development opportunities. Mr. Claude was primarily involved in the technical aspects of the operation. Mr. Bookstaff, on the other hand, undertook almost complete control of administrative responsibilities and assumed control over the finances and books of the operation.

10. As the business operations became more and more profitable, the parties also entertained and solicited a number of offers to purchase the entire operation. Mr. Marquez believed that he was integrally involved with each of these offers and the negotiations relating to the purchase of the business enterprise. However, in each

3

instance, Bookstaff determined that he did not want to accept the proposed offer.

11. As each successive offer was rejected, Bookstaff was made aware of Mr. Marquez' need for capital to fund other business ventures. During the applicable period, Bookstaff also withheld distributions that could and should have been properly made to the shareholders/members of the various entities at least in part to keep financial pressure on Marquez. Because of his functional position with the business entities, and due to the trust and confidence reposed in him by Marquez, Bookstaff was in a unique position to individually control and determine any distributions.

12. Bookstaff had previously loaned money to Mr. Marquez for various purposes, charging an interest rate of 2.5% per month. In approximately 2003-2004, Marquez discussed the possibility of another loan with Bookstaff to fund other, unrelated business ventures. Several of these business ventures were matters upon which Bookstaff had previously indicated a willingness to join Marquez, but subsequently decided to withdraw, leaving Mr. Marquez to fund 100% of the expenses.

13. During the course of these discussions, Bookstaff suggested that he simply buy Mr. Marquez' stock in their business enterprises.

14. Based upon the apparent termination of all negotiations for the sale of these companies, and the financial and operational status of the various entities as represented to him by Bookstaff, Marquez agreed to sell his stock in Popular Categories and North American to Bookstaff. On or about December of 2004, Marquez sold approximately a 7% interest in North American to Bookstaff. On or about January 26, 2005, Marquez and Bookstaff entered into a Stock Purchase Agreement with regard to Marquez' remaining shares in Popular Categories. Based upon the representations and omissions by Bookstaff, Marquez transferred his remaining

4

shares in the company in exchange for the payment of $1,600,000.00. While the transaction was characterized as a stock repurchase by Popular Categories, Bookstaff negotiated the agreement and became the sole remaining shareholder of the company by virtue of its execution. Moreover, at the time of the transaction and during all negotiations leading up to its consummation, Bookstaff was the majority shareholder of Popular Categories. On August 1, 2005, based upon the representations and omissions of Bookstaff, Marquez and Bookstaff entered into a Stock Purchase Agreement whereby Bookstaff purchased Marquez' remaining 8% interest in North American for $55,791.61.

15. However, in the course of these discussions between shareholders, and in the context of the business operation of these two Florida entities, Bookstaff failed to disclose to Marquez ongoing negotiations with another potential purchaser of their business enterprise. In fact, Bookstaff actively concealed and withheld from Marquez the interest of a third party in purchasing the business enterprise and their ongoing negotiations with that party. The material omissions and misrepresentations of Bookstaff constitute a fraud upon Mr. Marquez at the very same time that Bookstaff, as a majority shareholder, member, director and officer in the business entities, was negotiating with Marquez to purchase his ownership interest.

16. Not surprisingly, upon Bookstaff obtaining all of the stock of Mr. Marquez in the business entities, Bookstaff has now consummated the sale of the business entities to the third party, IREIT, that he has been in contact with since approximately October of 2004.

Court File #46 at pp.7-10.

II.

*Standard of Review*

In reviewing the dismissal of a complaint under Rule 12(b)(6), Federal Rules of Civil Procedure, this Court must construe the complaint in plaintiff's favor and accept as true all factual allegations and permissible inferences therein. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983), *cert. denied*, 469 U.S. 826 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 268 (1986).

III.

*Analysis*

Marquez's amended counterclaim alleges theories of breach of fiduciary duty and fraudulent inducement.[1]

Bookstaff contends that this Court should dismiss all aspects of Marquez's breach of fiduciary duty and fraudulent inducement claims except those that relate to Bookstaff's alleged duties owed to Marquez in his capacity as an officer

---

[1] Marquez's original counterclaim also contained a claim of unjust enrichment, but that claim has now been abandoned.

6

of PopularCategories.Com, Inc. However, Marquez claims Bookstaff owed him far deeper fiduciary duties. In Count I of the Amended Counterclaim, Marquez described Bookstaff's "formal positions" giving rise to this fiduciary duty to include:

A. Officer of Popular Categories;

B. Director of Popular Categories;

C. Majority Shareholder of Popular Categories;

D. Majority Member of North American;

E. Acting, Effective or Controlling Member of North American;

F. Officer of Popular Enterprises;

G. Managing Member of Popular Enterprises; and

H. Majority Member of Popular Enterprises.

Answer and Counterclaim at ¶ 19.

Marquez contends that Bookstaff breached his fiduciary duty to him by failing to disclose the contact interest and negotiations for the sale and acquisition of the two entities by a third party; fraudulently withholding information regarding the potential sale; negotiating and purchasing Marquez's stock while at the same time withholding information from Marquez which was necessary to properly evaluate the value of the stock; intentionally withholding shareholder payments from Mr. Marquez in an attempt to put financial pressure on Marquez to sell his stock; improperly diverting company revenue until such time as Bookstaff could purchase Marquez's

7

stock; and diverting revenue of PopularCategories.Com, Inc. and Popular Enterprises to his own benefit including amounts spent for capital improvements to real property owned by Bookstaff, individually.

The tort of fraudulent inducement arises from either a false statement of material fact or the concealment of a material fact where there is a duty of disclosure: "It is well-settled that fraud can be an intentional misrepresentation of a known, material fact or it can be the concealment or non-disclosure of a known fact when there is a duty to disclose." *Justice v. Anderson County*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997) (citing *Domestic Sewing Machine Co. v. Jackson*, 83 Tenn. 418 (Tenn. 1885)). When, as in this case, an allegation of fraudulent inducement arises from a non-disclosure, plaintiff must demonstrate the existence of a special relationship giving rise to a duty to disclose:

> Fiduciary relationship, confidential relationship, constructive fraud and fraudulent concealment are all parts of the same concept. The nature of the relationship which creates a duty to disclose, and a breach of [that] duty constitutes constructive fraud or fraudulent concealment, springs from the confidence and trust reposed by one in another, who by reason of a specific skill, knowledge, training, judgment or experience, is in a superior position to advise or act on behalf of the party bestowing trust and confidence in him. Once the relationship exists, 'there exists a duty to speak ... [and] mere silence constitutes fraudulent concealment.'

*Shadrick v. Coker*, 963 S.W.2d 726 (Tenn. 1998).

Upon a careful review of the counterclaim and construing all factual allegations in Mr. Marquez's favor, it does not appear beyond doubt that Marquez can prove no set of facts in support of his claim which would entitle him to relief. *See Conley*, 355 U.S. at 45-46. Marquez has identified multiple sources from which a fiduciary duty to him from Bookstaff may have arisen and upon which a breach of fiduciary claim and/or a fraudulent inducement claim could exist.

IV.

### *Conclusion*

In light of the foregoing, plaintiff Bookstaff's motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure [Court File #27] will be DENIED.

Order accordingly.

                                      *s/ Thomas A. Varlan*
                                  UNITED STATES DISTRICT JUDGE